RECEIVED
IN LAKE CHARLES, LA

DEC - 7 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:04 CR 20098 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| DAVID O. WILLIAMS | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Presently before the court are two motions by the defendant, David O. Williams ("Williams"), a Motion to Exclude Statement or in the Alternative, Motion to Recuse Prosecutor [doc. 335] and a Motion to Dismiss the Indictment [doc. 334]. These motions have been opposed by the Government.

Motion to Exclude Statement or in the Alternative, Motion to Recuse Prosecutor

The defendant asserts that the Government intends to introduce an inculpatory statement made by the defendant to investigators, including AUSA Larry Regan. Williams argues that the introduction of a statement that was witnessed by AUSA Regan would be highly prejudicial and would give AUSA Regan an unfair advantage in argument by providing an inference that he has special knowledge of the case and is to be trusted based on that knowledge. The defendant further argues that the introduction of the statement would violate Rule 37 of the Rules of Professional Conduct of the Louisiana State Bar as AUSA Regan would be a witness in a cause in which he is counsel.

AUSA Regan concedes that he witnessed an inculpatory statement made by the defendant

at the Jasper County Jail. AUSA Regan argues that he is not a necessary witness at trial as there were other law enforcement officers present. The report was prepared by one of the other officers. AUSA Regan submits that the task force officer will testify to the content of the statement at trial. AUSA Regan asserts that he will not elicit testimony from the witnesses to the statement that would in any way suggest that he was present during the statement or "even at the jail." Govt. Brief, p. 2. The Government further argues that nothing in the statement can be considered exculpatory to the defendant which might necessitate the defendant calling AUSA Regan as a witness.

AUSA Regan is not a necessary witness. There are others who will testify about Williams's inculpatory statement. AUSA Regan will not elicit testimony that he was present, therefore he will not create an inference of special knowledge or infer that he should be trusted based upon that knowledge. The defendant's Motion to Exclude Statement or in the Alternative, Motion to Recuse Prosecutor will be denied.

## Motion to Dismiss the Indictment

The Speedy Trial Act

The Speedy Trial Act of 1974 ("Act") generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance. 18 U.S.C. § 3161(c)(1). Recognizing that criminal cases vary widely and that there are valid reasons for greater delay in particular cases, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start. Section 3161(h)(8) permits a district court to grant a continuance and exclude the resulting delay if it makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial. To promote compliance without needlessly subverting important criminal prosecutions, the Act

provides that, if the trial does not begin on time and the defendant moves, before the trial's start or entry of a guilty plea, to dismiss, the district court must dismiss the charges, though it may choose whether to do so with or without prejudice.[1]

One of the statutory factors which a judge is to consider in determining whether to grant a continuance is whether the case is so unusual or so complex,[2] due to the number of defendants,[3] the nature of the prosecution,[4] a substantial number of witnesses who reside overseas,[5] or the existence of novel questions of fact or law,[6] that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by 18 U.S.C.A. § 3161.[7]

The length of an exclusion for a complex case should be reasonably related to the actual needs of the case and should not be used either as a calendar control device or a means of

---

[1] *Zedner v. U.S.*, 126 S.Ct. 1976, 1978 (U.S., 2006).

[2] In the case at bar, this case was certified as complex on the motion of co-defendant, Robert Lance, on August 20, 2004.

[3] *U.S. v. Tussell*, 445 F. Supp. 1 (M.D. Pa. 1977) (12 defendants); *U.S. v. Shuskey*, 488 F. Supp. 760 (E.D. N.C. 1980) (16 defendants).

[4] *U.S. v. McGrath*, 613 F.2d 361, 5 Fed. R. Evid. Serv. 107 (2d Cir. 1979) (unusual complexity of factual determination to be made by grand jury); *U.S. v. Kamer*, 781 F.2d 1380 (9th Cir. 1986) (numerous documents located overseas and in a foreign language); *U.S. v. Flood*, 462 F. Supp. 99 (D.D.C. 1978) (number of complex transactions involving different people).

[5] *U.S. v. Kamer*, 781 F.2d 1380 (9th Cir. 1986) (over 70 witnesses residing in Europe).

[6] *U.S. v. Noone*, 735 F. Supp. 443 (D. Mass. 1990), rev'd on other grounds, 938 F.2d 334 (1st Cir. 1991).

[7] FEDPROC § 22:1325; 18 U.S.C.A. § 3161(h)(8)(B)(ii).

circumventing the requirements of the Speedy Trial Act.[8] A district court's decision to grant a continuance in a complex case, which is sought by one defendant in order to have more time to prepare a defense, is not an abuse of discretion or a violation of the speedy trial rights of defendants who did not seek the continuance.[9]

In *Barker v. Wingo*,[10] the Supreme Court set forth a series of factors that courts should evaluate and balance in assessing constitutional speedy trial claims. Those factors are: "(1) the length of the delay, (2) the reason for [it], (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay."[11] The four-factor analysis is warranted in the instant case because the total time from indictment to trial exceeded one year.[12]

In undertaking a "full *Barker*-analysis," the court initially looks to "the first three factors (delay-length; reason for it; diligence in asserting right) in order to determine whether prejudice will be presumed or whether actual prejudice must be shown."[13] Prejudice may be presumed where the

---

[8] FEDPROC § 22:1325; *U.S. v. LoFranco*, 818 F.2d 276 (2d Cir. 1987).

[9] FEDPROC § 22:1325; *U.S. v. Thomas*, 774 F.2d 807, 18 Fed. R. Evid. Serv. 1332 (7th Cir. 1985) (in a written order explaining its actions, the district court observed that the case involved 6 defendants and thousands of financial documents which have been secured through discovery. The district court concluded the defendant's request for more time to prepare a defense was reasonable).

[10] 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

[11] *United States v. Cardona*, 302 F.3d 494, 496 (5th Cir.2002).

[12] *See United States v. Frye*, 372 F.3d 729, 736-37 (2004) (discussing this the Fifth Circuit's "one-year guideline" for whether the delay length is sufficient to call for an analysis of all four *Barker* factors).

[13] *Id.* at 736.

4

first three factors weigh "heavily" in the defendant's favor.[14]

As to the first factor, the speedy trial calculation runs from October 25, 2004,[15] the date that David Walker, the last co-defendant to be arrested had his initial appearance. The twenty-five month delay here-though long enough to prompt a full *Barker* analysis-is far too short to weigh in favor of presuming prejudice.[16]

The second factor that must be considered is the reason for the delay. There were several requests for continuances by various unsevered defendants to seek further discovery or pending pretrial hearings on motions.[17] The Government filed a motion to continue a suppression hearing on September 6, 2005. This request was based on the fact that some of the agents from the FBI Drug Task Force that investigated the case, and whose testimony was necessary to the hearing, had been deployed to New Orleans to assist in Hurricane Katrina relief efforts. Several of the FBI technicians who were to testify had been displaced.

Then, on September 24, 2005, Hurricane Rita devastated Lake Charles and there was a mandatory evacuation for several weeks. Prisoners were evacuated and attorneys and court personnel were displaced. Trial was impossible.

---

[14] *See United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir.2003).

[15] The government did a thorough job of reconstructing the time line in this case and those dates will not be restated herein.

[16] *Id.* at 232.

[17] There were also multiple motions filed by the defendant *pro se* in spite of the fact that he was represented by counsel and in spite of the fact that the defendant's motion to enroll as co-counsel had been denied by both Magistrate Judge Wilson and the undersigned. . See docket entries 72, 71, 101, 131, 132, 133, 134 188, 198 209, 255, 256, 258, 259, and 287

5

Hurricane Rita destroyed defense counsel's office, his computers and records, causing further delay. Then David Green, accepted a position with the Calcasieu Parish District Attorney's Office and he withdrew from this case. A new attorney, Andrew Casanave was appointed, and time was allowed for effective preparation.

Trial was set for July 31, 2006. On July 25, 2006, the defendant filed a motion asking that he be permitted to represent himself at trial. The defendant surreptitiously taped discussions with his own attorney effectively undermining his representation. Casanave filed a motion requesting appointment of new counsel. On July 26, 2006, Williams filed to have Casanave removed as counsel. Casanave's motion to withdraw was granted July 31, 2006. The court granted the motion to appoint new counsel, continuing the hearing on Williams's motion to suppress until the new counsel was prepared.

On August 9, 2006, Paul Marx was enrolled as counsel for the defendant. A trial date of January 8, 2007 was fixed. On November 13, 2006, the defendant filed the instant motions.

Under *Doggett v. United States*,[18] the second *Barker* factor cuts strongly in favor of a defendant if the Government acts in bad faith, intentionally holding up prosecution for the purpose of prejudicing the defendant. The Government's actions in this case do not show bad faith. The Government acted in good faith to secure the testimony of a necessary witnesses who had been affected by Hurricanes Katrina and Rita. Other delays were a direct result of defense motions, the defendant's behavior and his repeated failure to work with his appointed counsel.

The third *Barker* factor is the defendant's diligence in asserting his right to a speedy trial.

---

[18] 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Williams moved for a speedy trial in November, 2004. Although the defendant moved for speedy trial, many of the delays were the results of his own actions as set forth hereinabove.[19]

Prejudice cannot be presumed because the first two *Barker* factors do not cut strongly in the defendant's favor. Williams fails to argue that he suffered any actual prejudice. Upon analyzing these relevant factors, this court finds no Sixth Amendment violation. Therefore, his Sixth Amendment speedy trial claim must fail.[20]

The defendant cited *Zedner v. United States*,[21] in support of his motion to dismiss the indictment. The Supreme Court in *Zedner* held that, because a defendant may not prospectively waive the application of the Act, petitioner's waiver "for all time" was ineffective.[22] *Zedner* can be distinguished from the case at bar as there is no waiver "for all time" by any defendant and the intervening motions practice suspended the clock on many occasions. Continuances in this case where made in the interest of justice and the trial was not continued indefinitely.[23] The defendant's motion to dismiss the indictment on the basis of the Speedy Trial Act will be denied.

---

[19] These actions include lying on the witness stand. During the hearing on the motion to suppress his statement the defendant testified that the officers did not inform him that he was being taped. The videotape then explicitly showed that the defendant was advised that he was being taped.

[20] *U.S. v. Hernandez* 457 F.3d 416, 420-422 (C.A.5 (Tex.), 2006).

[21] *Id.*

[22] *Zedner v. U.S.*, 126 S.Ct. 1976, 1985-1987 (U.S., 2006).

[23] *Zedner* does not discuss *Barker*, not the analysis of whether there has been a speedy trial violation established by that case.

Grand Jury

The defendant asserts that the Grand Jury was advised by the United States that this indictment would "help solve a homicide" in Merryville, Louisiana. The defendant argues that the Grand Jury was improperly influenced by the United States to return an Indictment against David Williams, "whose involvement in any drug conspiracy was evinced only by snitch testimony of doubtful veracity."[24] Williams argues that the introduction of the comment regarding the alleged murder was prejudicial and that indicting him in a drug case to help solve a murder investigation is an improper and illegal use of the Grand Jury.

*U.S. v. Feurtado*[25] is factually similar to the case at bar. In *Feurtado*, a Federal Grand Jury in Columbia, South Carolina, initially indicted defendants on charges related to a substantial drug organization. In so doing it heard the testimony of a South Carolina Law Enforcement Division Agent, Agent McNair, who, in the course of his Grand Jury testimony, allegedly overstepped his bounds when he connected defendants to a series of New York homicides, including the killing of a police officer, unrelated to the charges for which they were being indicted.[26]

The district court determined that aside from Agent McNair's testimony, "the testimony of

---

[24] Defendant's Motion in Support of the Motion to Dismiss, p. 3.

[25] 191 F.3d 420, 423 (C.A.4 (S.C.), 1999).

[26] The Supreme Court set the standard for dismissal of indictments in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), which held that a defendant is entitled to dismissal of an indictment only where actual prejudice is established. In circumstances such as those presently before us that prejudice must amount either to proof that the grand jury's decision to indict was substantially influenced, or that there is "grave doubt" that the decision to indict was substantially influenced, by testimony which was inappropriately before it. *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. 2369.

8

Garry Feurtado and Kevin Barrett, alone, if believed, establishes probable cause to support the charges contained in the indictment." Additionally, the court found that certain portions of Agent McNair's testimony, not those contested, provided independent corroboration for that evidence. As noted, the district court, after examination of the grand jury testimony and a hearing at which oral testimony was taken, found that there was no presentation of the questionable testimony before the grand jury.

The Court of Appeal[27] concluded that while it did not find the defendants had established that improper testimony substantially influenced the grand jury's decision to indict, it did find that it had some doubt that the grand jury's decision to indict was free from the influence of that testimony. In view of that, the court dismissed the indictment without prejudice.[28]

In the instant case, FBI Task Force Agent Gerald Pittman testified before the Grand Jury on June 13, 2004. His testimony comprised 12 to 15 pages of the transcript. In the first portion of his statement, he told the Grand Jury (p. 3) that the FBI Task Force initially got involved in this matter at the request of State Law Enforcement officials who were investigating a double homicide that had occurred in Merryville, Louisiana, that they believed was related to a drug conspiracy between Merryville, Louisiana and Jasper, Texas.

On page 4 of his testimony, Agent Pittman testified regarding people he had interviewed in connection with the homicide investigation and was asked "And as a result of those interrogations

---

[27] *U.S. v. Feurtado*, 191 F.3d 420, 424 (C.A.4 (S.C.),1999).

[28] Accord: *United States v. Price*, 857 F.2d 234, 236 (4th Cir.1988); *United States v. Hayes*, 775 F.2d 1279, 1283 (4th Cir.1985).

9

and questioning, unfortunately, no credible information as to whom the perpetrators of the homicide were; right?" Agent Pittman replied "correct."

The Government argues that even though the homicides were mentioned in informing the Grand Jury as to how the FBI Task Force became involved in the investigation, he made it clear that, at that time, there was no credible evidence as to who committed the crimes.

Agent Pittman continued to answer questions related to those individuals that the Government could identify as involved in the methamphetamine trafficking between Merryville and Jasper. At the end of his testimony, the Government asked the jurors if they had any questions. A juror asked "Do the murders remain unsolved?" (P.13-14). Agent Pittman replied "yes." AUSA Regan said "we are - but we still - ," the Agent Pittman said "we are still actively investigating. It's our hope this will assist us greatly." The Government argues that this testimony was not prejudicial enough to warrant dismissal with or without prejudice.

When faced with similar testimony in *Feurtado*, the Fourth Circuit reviewed the testimony as a whole. In view of the finding that the presentation of the objectionable portions of McNair's testimony were inadvertent and that other portions of the grand jury's testimony free from taint supported the indictment, the court ordered that the indictment be dismissed without prejudice.

In *Feurtado*, the Fourth Circuit reasoned that the district court was correct to dismiss the indictment without prejudice. The new indictment issued on April 3, 1996 was handed down by a grand jury which considered only a transcript of witnesses' testimony before the original grand jury, which transcript did not include McNair's testimony. Thus, the Fourth Circuit held that the indictment on which the defendants were tried was entirely free of taint caused by the introduction

of McNair's objectionable testimony before the original grand jury, and there could not have been any prejudice to the defendants on that account. This court has not found an analogous Fifth Circuit case.

*Grand Jury Law and Practice* discusses prejudicial information brought before a Grand Jury and the American Bar Association's Criminal Justice Standards provide that the prosecutor "should not make statements or arguments in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury."[29] Several kinds of prosecutorial comments have been identified as improper by the courts. Courts generally treat as improper references to the fact that the accused is suspected of other serious crimes that are not under investigation by the grand jury.[30]

The Supreme Court, however, set the standard for dismissal of indictments in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), which held that a defendant is entitled to dismissal of an indictment only where actual prejudice is established. In circumstances such as those presently before us that prejudice must amount either to proof that the grand jury's decision to indict was substantially influenced, or that there is "grave doubt" that the

---

[29] American Bar Association, Standards for Criminal Justice, The Prosecution Function, Standard 3-3.5(b) (3d ed. 1993). The ABA Standards should not be understood to require that the prosecutor follow the rules of evidence, which are expressly made inapplicable to grand jury proceedings in many jurisdictions. GRJURLAW § 9:2

[30] United States v. Hogan, 712 F.2d 757 (2d Cir. 1983); United States v. Al Mudarris, 695 F.2d 1182 (9th Cir. 1983). GRJURLAW § 9:2

decision to indict was substantially influenced, by testimony which was inappropriately before it. *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. 2369.

In the instant case there is no evidence of prosecutorial misconduct in the presentation of the Grand Jury testimony. Neither has actual prejudice been established. There is no evidence that the Grand Jury's decision to indict was substantially influenced by Agent Pittman's brief and inconsequential testimony about the homicides. The defendant's Motion to Dismiss the Indictment will be denied.

Lake Charles, Louisiana, this __6__ day of December, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE